**IN THE US FEDERAL DISTRICT COURT OF NEBRASKA**

| | | |
|---|---|---|
| UNCENSORED AI, INC., a Delaware corporation, | ) ) ) | Case No.: 8:25-CV-00040 |
| Plaintiffs, | ) ) | **AMENDED COMPLAINT** |
| vs. | ) ) | |
| PERPLEXITY AI, INC.; START ENGINE CROWDFUNDING, INC.; UNCENSORED.COM, NOFILTERGPT, INC., NASTIA CYBERNETICS, SAS, VENICE AI, INC., FREEDOMGPT, INC., UNCENSOREDAI.IO, AP SOFTWARE, LTD., HENRY FORDIN KATU 5, CLINT NEILSON, CHAT UNCENSORED, INC., ERIC VORHEES, | ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

COME NOW Plaintiffs Uncensored AI, Inc ("Uncensored" or "Plaintiff"), by and through their attorneys of record, and, pursuant to Neb. Ct. R. Pldg. §§ 6-1113 and 6-1115, make their Amended Complaint against Defendants Perplexity AI, Inc., Start Engine Crowdfunding, Inc., Uncensored.com, Nofilter GPT, Inc., Nastia Cybernetics, SAS, Venice AI, Inc., Freedom GPT, Inc., Uncensoredai.io, AP Software, Ltd., Henry Fordin Katu 5, Clint Neilson, Chat Uncensored, Inc., and Eric Vorhees (together "Defendants") and state and allege as follows:

**PARTIES**

1. Uncensored AI, Inc. is a Delaware corporation registered to conduct business in the state of Nebraska, with their principal places of business located in Omaha. Troy Weber is CEO, and his principal residence is in Omaha, Douglas County, Nebraska. Jason Dick is COO, and his principal residence is in Council Bluffs, Pottawattamie County, Iowa.

2. On information and belief, the above-listed defendant corporations are Delaware registered corporations.

## JURISDICTION

1. Subject-matter jurisdiction is proper in this Court.

2. Venue is proper in this Court pursuant to Neb. Rev. Stat. § 25-403.1.

## FACTUAL BACKGROUND

1. Uncensored registered its name and word mark including the phrase Uncensored AI with the United States Patent and Trademark Office on February 11, 2023.

2. Perplexity AI, Inc. ("Perplexity") is a corporation registered with the secretary of state of the state of Delaware.

3. Start Engine Crowdfunding, Inc. ("Start Engine") is a corporation registered with the secretary of state of the state of Delaware.

4. Chat Uncensored AI ("Chat Uncensored") is a company whose website is uncensored.com and owned in the personal name of Clint Neilson.

5. Chat Uncensored has over 100,000 users, per its website.

6. Chat Uncensored has a subscription fee of $7.99/week for its chat-based service.

7. Chat Uncensored is using the term "Uncensored AI" in violation of Uncensored's trademark and is running a google advertisement claiming to be "The Official Uncensored AI."

8. This use of Uncensored's mark is in violation of Uncensored's intellectual property rights and is likely to cause confusion amongst users and in the market.

9. Chat Uncensored is interfering with actual and prospective business relationships and contracts of Plaintiff by using Plaintiff's mark and causing confusion and damaging Plaintiff's reputation in the AI chatbot industry.

10. Uncensored AI Image Generator & AI Chat, whose website is uncensoredai.io is owned by AP Software, Ltd., Henry Fordin Katu 5 (together "AP Software").

11. AP Software is infringing on Uncensored's trademark, causing likely confusion amongst users and in the marketplace and in the AI chatbot industry, damaging Uncensored's reputation in that AP Software is producing AI pornography in violation of deceptive trade practices in violation of Nebraska and federal law by doing the following: it

"Manufactures, produces, publishes, distributes, monetizes, promotes, or otherwise makes publicly available any visual depiction of sexually explicit conduct, any obscene material, or any material that is harmful to minors in which any person depicted as a participant or observer" without consent.

12. Nastia AI ("Nastia") whose website is nastia.ai and is owned by Nastia Cybernetics, Melvyn Franky-Junior Vincent Fowell is infringing upon Uncensored's mark, causing a likelihood of confusion amongst users and in the marketplace and in the AI chatbot industry. The subscription fee for Nastia's service is $10-30. Nastia has run google advertisements in violation of Uncensored's trademark and in violation of the Nebraska and federal Deceptive Trade Practices Acts using the trademarked phrase "Uncensored AI."

13. Freedom GPT ("Freedom") whose website is freedomgpt.com is owned by Age of AI and John Arrow. Freedom is infringing upon Uncensored's trademark and causing a likelihood of confusion amongst users and in the marketplace and in the AI chatbot industry. Freedom is using the uncensored AI phrase in providing unrestricted access to AI knowledge. Freedom was sent a cease and desist by Uncensored's legal counsel to no avail. Freedom is also engaged in deceptive trade practices.

14. Venice AI ("Venice") whose website is venice.ai and owned by Erik Voorhees is infringing upon Uncensored's trademark and causing a likelihood of confusion amongst users and in the marketplace and in the AI chatbot industry by using the phrase "uncensored AI" on its website and in google ads after having received a cease and desist letter from Uncensored's legal counsel. Venice is also engaged in deceptive trade practices.

## CLAIMS

### COUNT I – TORTIOUS INTERFERENCE WITH ACTUAL AND PROSPECTIVE BUSINESS RELATIONSHIPS AND CONTRACTS

1. Defendants have engaged in deceptive trade practices and trademark infringement on Plaintiff's intellectual property, including trademark, which has tortiously interfered with actual and prospective business relationships and contracts of Plaintiff.  Defendants'

statements and interference with Plaintiff's current and prospective clients have caused damage to Plaintiff in the loss of future business relationships.

2.  The interference by Defendants was intentional, unjustified, and proximately caused damages to Plaintiff in an amount to be proven at trial.

3.  Specifically, Start Engine is a crowd-funding platform that contracts to raise funds for startup companies and entrepreneurs and advertises that it can raise a certain amount of funds within a given timeframe subject to the startup complying with stipulations, which at all times Plaintiff complied with, subject as well to SEC compliance and regulatory requirements.

4.  From October 24, 2024 through present, Start Engine has failed to comply with SEC and reporting requirements and has failed to form the necessary Special Purpose Vehicle as required by the contract dated October 24, 2024 (the "Contract").

5.  Start Engine has failed to make efforts per the Contract signed by Plaintiff and Start Engine to raise $5,000,000 pursuant to certain conditions and stipulations required by the Contract.

6.  Plaintiff has written evidence via emails and texts between Start Engine and Plaintiff of multiple campaign updates that were never published, as required by the Contract.

7.  One such update was to be published January 7, 2025 for potential investors as contracted for by Start Engine and Plaintiff but was not published until January 29, 2025 two days prior to the deadline for raising the agreed upon funds per the Contract.

8.  As of February 3, 2025, five campaign funding updates remain pending in Start Engine's investment platform portal despite being properly submitted through the compliance portal and to Plaintiff's representative through Start Engine.

9.  Plaintiff has written evidence via text messages and emails that Start Engine bought shares via a third-party in a direct competitor, Perplexity, of Plaintiff and notified Plaintiff of the

same in writing via email dated January 3, 2025 and then promptly promoted Perplexity on the front page of Start Engine and to Start Engine's primary and largest AI investors and venture capital funds, a direct conflict of interest and in breach of contract with Plaintiff.

10. Plaintiff's representative from Start Engine changed midway through the investment campaign due to the previous representative either leaving or being let go. That caused a breakdown in communication and a delay in funding, also in breach of contract between Start Engine and Plaintiff. Plaintiff's representative was changed from Brendan Dooley to Aaron Dolton midway through the campaign, causing a breakdown in communications but also a breach of contract, causing a delay in promotion to potential investors and venture capital funds and customers of Plaintiff, which slowed and breached compliance with the Contract.

11. Further, Start Engine failed to provide a copy of the STA, SEC EDGAR filings, the required onboarding manager, and the required monthly/disbursement withdrawals as required by the Contract.

12. Start Engine further failed to provide access to a robust & detailed resource center that will contain marketing playbooks and campaign best practices as required by the Contract.

13. Start Engine further failed to provide Marketing support including the following as required by the Contract: "Start Engine shall provide Plaintiff with a dedicated "Funding Strategist once the offering reaches the Minimum Offering Amount to provide organic outreach support, implement advertising pixels, and share specific campaign strategies."

14. Start Engine further failed to provide the following as required by the Contract: "Access to paid creative services - Creative videos and ad content."

15. Start Engine further failed to provide the following as required by the Contract: "Ongoing campaign support with Start Engine's Campaign Management Team," as Start Engine failed to provide sufficient communication and ongoing marketing and campaign support as required by the Contract and instead contracted with competitors such as the

aforementioned Perplexity and instead bought and sold such competitor's stock and failed to market and campaign for Plaintiff as required by the Contract.

16. Specifically, Perplexity is an artificial intelligence ("AI") startup company and competitor to Plaintiff.

17. Perplexity had both implied and explicit notice that Plaintiff was on Start Engine's platform and that Plaintiff is a competitor.

18. Perplexity proceeded to sell stock in itself to Start Engine anyway and to allow Start Engine to promote Perplexity on Start Engine's front page to Start Engine's top AI investors and venture capital funds.

19. Perplexity knew and had notice then that Plaintiff had a business relationship expectancy with those same AI investors and venture capital funds as well as with customers/users that found Plaintiff through Start Engine's platform.

WHEREFORE, Plaintiff prays for a Judgment in their favor on Count I of their Amended Complaint awarding damages in an amount to be proven at trial, prejudgment and post judgment interest at the highest legal rate, its costs expended in connection with this action, and any other relief the Court deems just and equitable to all Defendants except Perplexity, but as to Perplexity Plaintiff prays for a Judgment in their favor on Count I of their Amended Complaint awarding damages in an amount of at least but not limited to $15,000,000,000.00 as that is the current valuation post-raise on Start Engine's platform per Perplexity's Pitchbook.com page after Perplexity's most recent raise of $500M or in an amount to be proven at trial, prejudgment and post judgment interest at the highest legal rate, its costs expended in connection with this action, and any other relief the Court deems just and equitable.

### COUNT II– UNJUST ENRICHMENT AND MISAPPROPRIATION

20. Plaintiff claims Start Engine has committed unjust enrichment unjustly enriching itself as it has repeatedly engaged fraudulent, deceptive trade practices, trademark and intellectual property infringement, tortious interference with a business relationship or expectancy of a business relationship, and conflict of interest practices since October 24, 2024 by agreeing to and failing to, with primary rights: "reserves the right to display and announce

the Offering (as defined in the Contract) to Start Engine users at capital raise thresholds chosen by Start Engine Primary," while directly investing in and promoting on its front page and to its top AI investors and venture capital funds a direct competitor in Perplexity and by failing, more generally, to adhere to the terms and conditions of the Contract with Plaintiff.

21. Further, the Contract states: "These Quarterly Updates will continue during and after the Offering and must continue for as long as the company has investors from the Start Engine Offering. Company shall not be required to post Quarterly updates if Company is subject to public reporting requirements under the Securities Act." Start Engine also violated the same.

22. As is evidence from the now-ceased campaign of Plaintiff's on Start Engine's platform, Plaintiff has investors and active users from the Start Engine Offering who are willing to not only invest in Plaintiff but to continue to use Plaintiff's platform and to interact with Plaintiff's company; therefore, Start Engine is contractually obligated to continue the campaign as required by the Contract.

23. The Contract further states, "Start Engine also reserved the right to reserves the right to "run A/B tests on its website and mobile application. These tests may divert a percentage of traffic from the standard Start Engine pages to testing pages while the A/B test runs." Start Engine has now unjustly enriched itself by taking fees and marketing campaign funds from Plaintiff since October 24, 2024 but failing to use those fees and marketing funds for the same, and Start Engine has now allowed Plaintiff's campaign to lapse by failing to timely file an extension with the SEC.

24. Start Engine has purposefully, actively, intentionally, fraudulently, deceptively, and with direct conflict of interest, hindered Plaintiff from having a successful campaign for investment in Plaintiff, and Start Engine has been unjustly enriched not only monetarily but with the data and traffic of Plaintiff's customers or users and investors as well as by having access to Plaintiff's intellectual property and internal data, software, trademark, and overall intellectual property. Start Engine has also misappropriated Plaintiff's intellectual property.

25. Perplexity, specifically, has also been unjustly enriched in its use of Plaintiff's intellectual property and has misappropriated the same including Plaintiff's trademark phrase "Uncensored AI," which Perplexity has used not only in its campaign with Start Engine but in its overall marketing and in its communications with its customers and investors.

26. All other Defendants have also been unjustly enriched by their continued and unjust use of Plaintiff's intellectual property as well, in their marketing and communications to their customers/users, and investors. All other Defendants have also misappropriated Plaintiff's intellectual property for the reasons set forth herein above.

WHEREFORE, Plaintiff prays for a Judgment in their favor on Count II of their Amended Complaint awarding damages in an amount to be proven at trial, prejudgment and post judgment interest at the highest legal rate, its costs expended in connection with this action, but, specifically as to Start Engine, in an amount of at least $5,000,000 per the fundraise initiative set forth in the Contract, though Plaintiff has suffered both monetary and reputational damage, with any further damages in an amount to be determined at trial, and any further relief this Court deems just and equitable, and specifically as to Perplexity in an amount of at least but not limited to $15,000,000,000.00 as that is the current valuation post-raise on Start Engine's platform per Perplexity's Pitchbook.com page after Perplexity's most recent raise of $500M or in an amount to be proven at trial, prejudgment and post judgment interest at the highest legal rate, its costs expended in connection with this action, and any other relief the Court deems just and equitable.

## COUNT III– TRADEMARK INFRINGEMENT/LANHAM ACT VIOLATION

1. Defendants have all engaged in deceptive trade practices, misappropriation and trademark infringement on Plaintiff's intellectual property, including trademark, which has caused damage to Plaintiff.

2. Plaintiff's own a valid, federally registered USPTO mark as stated in paragraph 1. of the Factual Background section of this Amended Complaint.

3. Plaintiff's mark is senior to any claims or marks by Defendants.

4. Defendants' use of the mark is likely to cause and has caused confusion amongst customers/users and existing investors and potential investors in Plaintiff.

WHEREFORE, Plaintiff prays for a Judgment in their favor on Count III of their Amended Complaint awarding damages in an amount to be proven at trial, prejudgment and post judgment interest at the highest legal rate, its costs expended in connection with this action, but, specifically as to Start Engine, in an amount of at least $5,000,000 per the fundraise initiative set forth in the Contract, though Plaintiff has suffered both monetary and reputational damage, with any further damages in an amount to be determined at trial, and any further relief this Court deems just and equitable, and specifically as to Perplexity in an amount of at least but not limited to $15,000,000,000.00 as that is the current valuation post-raise on Start Engine's platform per Perplexity's Pitchbook.com page after Perplexity's most recent raise of $500M or in an amount to be proven at trial, prejudgment and post judgment interest at the highest legal rate, its costs expended in connection with this action, and any other relief the Court deems just and equitable.

## COUNT IV– UNIFORM DECEPTIVE TRADE PRACTICES ACT; NEBRASKA DECEPTIVE TRADE PRACTICES ACT 87-302 VIOLATION

1. Defendants all have engaged in deceptive trade practices regarding Plaintiff's intellectual property and company, including trademark and customer/user, usage, and investor data, which has caused damage to Plaintiff.

2. Plaintiff's own a valid, federally registered USPTO mark.

5. Defendants' use of the mark is likely to cause and has caused confusion amongst customers/users and existing investors and potential investors in Plaintiff.

3. Defendants' use of the mark also "causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services."

4. Defendants use of the mark also "causes likelihood of confusion or of misunderstanding as to affiliation, connection, or association with, or certification by, another."

5. Defendants, except Perplexity and Start Engine, have engaged in the following in violation of the Act: "Manufactures, produces, publishes, distributes, monetizes, promotes, or otherwise makes publicly available any visual depiction of sexually explicit conduct, any obscene material, or any material that is harmful to minors in which any person depicted as a participant or observer" without consent.

6. Perplexity and Start Engine, specifically, have violated, generally and specifically, the UNIFORM DECEPTIVE TRADE PRACTICES ACT; NEBRASKA DECEPTIVE

TRADE PRACTICES ACT 87-302, causing damages to Plaintiff.

WHEREFORE, Plaintiff prays for a Judgment in their favor on Count IV of their Amended Complaint awarding damages in an amount to be proven at trial, prejudgment and post judgment interest at the highest legal rate, its costs expended in connection with this action, but, specifically as to Start Engine, in an amount of at least $5,000,000 per the fundraise initiative set forth in the Contract, though Plaintiff has suffered both monetary and reputational damage, with any further damages in an amount to be determined at trial, and any further relief this Court deems just and equitable, and specifically as to Perplexity in an amount of at least but not limited to $15,000,000,000.00 as that is the current valuation post-raise on Start Engine's platform per Perplexity's Pitchbook.com page after Perplexity's most recent raise of $500M or in an amount to be proven at trial, prejudgment and post judgment interest at the highest legal rate, its costs expended in connection with this action, and any other relief the Court deems just and equitable.

## COUNT V – BREACH OF CONTRACT

1. Start Engine has committed Breach of Contract with Plaintiff.
2. Per the Contract, agreed upon in writing as of October 24, 2024 by both Start Engine and Plaintiff, Start Engine owed a duty to Plaintiff, upon mutually agreed upon terms and conditions, that were at all times met by Plaintiff.
3. Per the above-described factual allegations, Start Engine breached that duty to Plaintiff, causing damages in an amount of at least $5,000,000 but in an amount to be determined at trial and that this Court deems just and equitable as Plaintiff has not only suffered monetary damages but reputational damages amongst its current investors and customers and potential, expected investors and customers.
4. Start Engine has engaged with Plaintiff in bad faith since October 24, 2024, knowing the above factual allegations, especially considering Start Engine's previous and ongoing relationship with Perplexity.
5. Start Engine acted with wonton disregard and recklessness for any and all contractual duties owed to Plaintiff per the above outlined terms and conditions.
6. Lastly, Start Engine acted in Breach of Contract as well when Start Engine emailed Plaintiff on February 2, 2025 and informed Plaintiff that it had less than 30 minutes to

sign a Settlement and Release Agreement releasing Start Engine from all claims and holding Start Engine harmless from all Breach of contract claims when in fact Start Engine knew, as evidenced by written text to Plaintiff dated February 2, 2025, that Start Engine knew that such timeframe or deadline was in fact one hour and a half to file and extension for the crowdfunding campaign at issue per the Contract with Plaintiff with the SEC. Start Engine not only committed fraud and misrepresentation in its written information to Plaintiff to coerce Plaintiff into signing a settlement and release, it was aware of the actual SEC deadline as is known publicly via the SEC website and as is known via written evidence from Start Engine to Plaintiff dated February 3, 2025. Thus, Start Engine not only committed Breach of Contract but fraud in the inducement of such Contract, fraud, misrepresentation, and unjust enrichment as alleged in the factual allegations herein.

WHEREFORE, Plaintiff prays for a Judgment in their favor on Count V of their Amended Complaint awarding damages in an amount of at least $5,000,000 per the fundraise initiative set forth in the Contract, though Plaintiff has suffered both monetary and reputational damage, with any further damages in an amount to be determined at trial, and any further relief this Court deems just and equitable.

## JURY DEMAND

Defendants pray for a trial by jury on all matters raised herein.

DATED this 23rd day of May 2025.

Respectfully submitted,

UNCENSORED AI, INC., a Delaware limited liability company.

Plaintiffs.

By:    /s/ Thomas C. Dorwart
       Thomas C. Dorwart, NE #25698
       Dorwart Law

7305 Main St.
Ralston, Nebraska 68127
Telephone: (402) 558-1404
E-Mail: tom@dorwartlaw.com
ATTORNEYS FOR PLAINTIFFS